IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

---

| | |
|---|---|
| William Bailey, Jacqueline Baker, and Kevin Borntreger, | |
| *On behalf of themselves and those similarly situated*, | Case No. 1:20-cv-00432 |
| Plaintiffs, | |
| v. | Judge Michael R. Barrett |
| | Chief Magistrate Judge Karen L. Litkovitz |
| Six Slice Acquisitions, LLC, *et al.*, | |
| Defendants. | |

---

PLAINTIFFS' UNOPPOSED MOTION FOR SETTLEMENT APPROVAL

---

Plaintiffs ask the Court to grant approval of the parties' Settlement Agreement, attached as Exhibit 1, order the parties to carry out the terms of the Settlement Agreement, and dismiss the case with prejudice. The Settlement Agreement resolves the opt-in plaintiffs' claims for unpaid wages under the Fair Labor Standards Act and Ohio and Kentucky wage and hour law. The arguments in support of Plaintiffs' motion are more fully set forth in the attached memorandum.

Because this is a settlement of only the opt-in members' claims, a hearing is not required.

Respectfully submitted,

*/s/ Laura E. Farmwald*
Andrew R. Biller (Ohio Bar No. 0081452)
Andrew P. Kimble (Ohio Bar No. 0093172)
Laura E. Farmwald (Ohio Bar No. 0100141)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236

1

Telephone: (513) 202-0710
Facsimile: (614) 340-4620
akimble@billerkimble.com
abiller@billerkimble.com
lfarmwald@billerkimble.com

www.billerkimble.com

*Counsel for Plaintiffs and the putative class*

MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
FINAL SETTLEMENT APPROVAL

## 1. Introduction

The parties have entered into a Settlement Agreement to resolve this case. The settlement provides the opt-in plaintiffs with approximately 190% of their unpaid wages, *after* accounting for the proposed attorney's fee award. This is an excellent result in this type of case.

Plaintiffs seek an order (1) granting final approval of the Settlement Agreement as fair, reasonable, and adequate; (2) approving the requested award of attorney's fees and costs; (3) approving the service awards; (4) dismissing the action with prejudice; and (5) ordering the parties to carry out the remaining terms of the Settlement Agreement. Defendants do not oppose this request.

## 2. Standard of Approval for an FLSA Settlement.

In evaluating an FLSA settlement, the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols.*, LLC, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard.

### 3. Background of Lawsuit and Claims

Plaintiffs William Bailey, Jacqueline Baker[1], and Kevin Borntreger were pizza delivery drivers for Defendants' Marco's Pizza stores. The Defendants operated several Marco's Pizza locations in Ohio and Kentucky during the relevant time period.

This lawsuit centers on Plaintiffs' allegations that the Defendants inadequately reimbursed their delivery drivers for the drivers' delivery and driving-related expenses. *See* Second Amended Complaint, Doc. 89. Specifically, Plaintiffs allege that that Defendants required delivery drivers to provide their own vehicles to deliver the Defendants' pizza and other food, and the failure to adequately reimburse the drivers caused their wages to fall below the federal minimum wage. *Id.*

In addition to the under-reimbursement claim, Plaintiffs also allege that the Defendants failed to pay minimum wage because they failed to properly claim a tip credit from the delivery drivers' wage. *See* Doc. 89. Specifically, Plaintiffs contend that, after accounting for unreimbursed vehicle expenses, the Defendants did not actually pay the tipped wage rate they promised to pay, and therefore forfeited their right to claim a tip credit offset. *Id.* Plaintiffs also allege that Defendants' reimbursement policies and practices not only violated federal and state minimum wage laws, but also violated the Ohio's and Kentucky's Prompt Pay Acts (O.R.C. § 4113.15 and K.R.S. §337.020), violated Ohio's Criminal Act's statute, O.R.C. § 2307.60, and resulted in the Defendants being unjustly enriched by the delivery drivers. *Id.* The crux of the Parties' dispute is whether the reimbursement provided by the Defendants adequately reimbursed Plaintiffs for their vehicle expenses.

---

[1] Since the filing of this lawsuit Plaintiff Jacqueline Baker has officially changed her name to her married name, Jacqueline Hill.

Defendants dispute liability. Moreover, Defendants dispute Plaintiff's calculation of and measure of damages, should liability be established.

Since the inception of this lawsuit, May 28, 2020, the parties have been litigating the issues involved by participating in discovery and through the briefing and filing of Motions to Stay, Motions to Dismiss, and Motions to Compel (*See* Docs. 18, 56, 58-59, 98, 101, 102, 105-108).

On November 30, 2020, this Court granted Plaintiff's opposed Motion to Send Notice to his similarly situated delivery drivers employed by Defendants. (Doc. 19). Following the notice process, approximately 80 individuals opted-in to the action.

After several contested discovery disputes (as noted above), the Parties attended a private mediation with a professional mediator. The mediation ended in an impasse. For several more months, the parties engaged in continuing negotiations through the mediator until they reached a negotiated settlement. A copy of the Settlement Agreement is attached hereto as Exhibit 1. The Settlement resolves all claims by the Plaintiffs, Opt-in Plaintiffs and named Defendants.[2]

### 4. Summary of Settlement Terms

The settlement agreement creates a net settlement fund of $291,804.20. *See* Exhibit 1.[3] Under the terms of the Agreement, each Collective Member who worked for the Defendants in Ohio at any time between May 28, 2017, and the date the Agreement was executed and each Collective Member who worked for Defendants in Kentucky at any time between May 28, 2015 and the date the Agreement was executed, will receive a share of the settlement fund. For purposes

---

[2] The Settlement also resolves potential claims against Michael Winner who was not a named defendant but involved in Defendants' operations.

[3] A signed copy of the Agreement will be supplementally filed within seven days.

of the settlement agreement, "Collective Member" means the named Plaintiffs and any individual who opted-in to the Lawsuit *See* Exhibit 1.

After subtracting service awards and claims administration costs, the remainder of the settlement fund will be distributed based on hours worked as a delivery driver by each Collective Member during their respective time period (Ohio: May 28, 2017 to the date of execution of the Settlement Agreement; Kentucky: May 28, 2015 to the date of execution of the Settlement Agreement) ("Class Period"), divided by the total hours worked as a delivery driver by all Collective Members during their respective Class Period. *Id.*

In exchange for these payments, all Collective Members who cash or negotiate a settlement award check or who did not timely submit an opt-out form, release all FLSA and Ohio and Kentucky wage and hour claims that accrued during the relevant time period, and which arose out of the facts and claims asserted in the lawsuit. *Id.*

Checks will be distributed to class members within 45 days of a grant of final approval of the settlement. *Id.* Class members will have 365 days from the date the check is issued to cash the check. *Id.* In the event that a check needs to be re-issued to a class member, during the 365-day period, the 365-day period does not restart. *Id.* If any checks remain uncashed after 365 days from the first checks being issued, the funds from those uncashed checks will be returned to Defendants. *Id.*

Defendants have agreed to pay attorneys' fees, calculated using Plaintiff's counsel's lodestar amount, and advanced litigation expenses, as part of the settlement. Thus, the class members' awards will not be reduced on account of attorneys' fees and costs. Only service awards and settlement administration costs will be deducted from the settlement fund.

**5. The settlement provides for a fair resolution of the disputed claims.**

The requirement that the Settlement Agreement resolves a bona fide dispute between the parties "stems from the need to ensure the parties are not negotiating around the FLSA's requirements concerning wages and overtime." *Call v. CTA Pizza, Inc.*, No. 2:18-cv-00696, at *7 (S.D. Ohio Oct. 21, 2019). Bona fide disputes have been found to exist in similar pizza delivery driver cases where the parties had a dispute as to which reimbursement rate would be used to determine proper compensation for the delivery drivers. *Id.*

The most important factor to consider when evaluating a proposed settlement is Plaintiffs' probability of success on the merits. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *19. To evaluate this factor, Plaintiffs will describe the facts and law surrounding their claims.

Plaintiffs allege that Defendants' reimbursement rate was inadequate and, as a result, drove the delivery drivers' wages below the legally mandated minimum wage. Plaintiffs seek under-reimbursed vehicle expenses, unpaid overtime wages, and the difference between the tipped wage rate paid and full minimum wage for all hours worked under the FLSA. This issue has been hotly litigated in cases across the country for at least the past ten years. *Parker v. Battle Creek Pizza, Inc.*, 600 F. Supp. 3d 809, 810 (W.D. Mich. 2022). To answer that question, one must first know how to measure the expenses in the first place.

Generally, there is a consensus that that an employer meets its minimum wage obligation if it tracks, records, and reimburses each employee's actual vehicle expenses. *Waters v. Pizza to You, LLC,* 538 F. Supp. 3d 785, 793 (S.D. Ohio 2021). If that has not happened, however, how is an employer's wage obligation measured? Courts are divided on that question. *Compare*, *Waters*, *supra*, and *Bradford v. Team Pizza, Inc.*, 568 F. Supp. 3d 877 (S.D. Ohio 2021).

7

Plaintiffs contend that neither the Fair Labor Standards Act nor its regulations answer this question. The Department of Labor's Field Operations Handbook, however, provides relevant agency guidance. *Parker* at 814. Under that guidance, the IRS Business Mileage Rate may be used in lieu of actual costs to measure compliance. Plaintiffs argue that courts should defer to this guidance according to *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415, 204 L. Ed. 2d 841 (2019).

In contrast, Defendants contend that a regulation 29 C.F.R. § 778.217 answers this question, thereby making agency deference unnecessary. Defendants argue that 29 C.F.R. § 778.217 allows employers to reimburse the "reasonably approximate amount" of vehicle expenses. *See Bradford* at 881-882. Defendants further contend that they did, in fact, reimburse the reasonably approximate amount of the drivers' expenses.

Further complicating the issue, on August 31, 2020 the Department of Labor issued an Opinion Letter on this subject, mostly endorsing the pizza industry's position. Even so, the Letter states that the IRS rate is "presumptively reasonable." *See* August 2020 DOL Opinion Letter FLSA2020-12.

Courts have adopted numerous, inconsistent approaches. Some have adopted Plaintiffs' position. *See Waters, supra; Parker v. Battle Creek Pizza, Inc.*, 600 F.Supp.3d 809 (E.D. MI 2022). Some have adopted Defendants' position. *See Bradford*, *supra*. At least one has held that the regulations are ambiguous, 29 C.F.R. § 778.217 doesn't apply, and both sources of agency guidance apply. *Edwards v. PJ Ops Idaho, LLC*, No. 1:17-cv-00283-DCN, 2023 U.S. Dist. LEXIS 133633, at *29 (D. Idaho July 31, 2023). Another has held that the regulations are ambiguous, but *no* agency guidance applies. *Rodriguez v. GC Pizza LLC*, No. 4:20-cv-3106, 22 U.S. Dist. LEXIS 170920, at *9 (D. Neb. Sept. 21, 2022).

At the time the parties reached a settlement in principle, the Sixth Circuit had recently heard oral arguments on this issue. *See Parker v. Battle Creek Pizza, Inc.*, Case No. 22-2119 (6th Cir.) (Doc. 38, scheduling the appeal for oral argument on October 18, 2023; Doc. 40 Order allotting oral argument time for *Parker* and consolidated case *Michael Bradford v. Team Pizza, Inc.*, Case No. 22-3561). The Sixth Circuit has not yet ruled on the issue.

Against this background, there are many *bona fide* disputes in this case. First, as set forth above, the parties vehemently disagree about which standard should be applied to Plaintiffs' claims. Second, regardless of which standard applies, there are real disputes about liability and damages. Defendants claim the "reasonably approximate" standard applies, but contend many drivers were paid properly even if the IRS-rate applies. Plaintiffs claim the IRS-rate applies, but contend many drivers were not paid properly even if the "reasonably approximate" standard applies. This settlement resolves these significant disputes of law and fact.

Third, the Parties disagree about the appropriate statute of limitations. Under the FLSA, the statute of limitations is two years by default. If Plaintiff proved Defendants acted "willfully," the statute of limitations would be extended by one year. 29 U.S.C. § 255(a).

Fourth, the parties dispute whether the Defendants adequately claimed a tip credit from the delivery drivers' wages and which of the Defendants qualified as an "employer" under the FLSA, and Ohio and Kentucky law.

Fifth, the parties disagree about what damages are available to the Plaintiffs even if they were to prevail on the merits. Plaintiffs also assert claims under the state wage and hour laws of Ohio and Kentucky. Ohio's state law claims have a three-year statute of limitations and Kentucky's state law claims have a five-year statute of limitations. The parties agree that Plaintiffs can only

recover any underlying unpaid wages once, regardless of which legal source allows for the recovery—state or federal law. Some state laws, however, allow for additional damages. *See e.g.*, Ohio Const. Art. II, Sec. 34a; K.R.S. §337.

The parties disagree regarding whether these additional state law damages "stack." Plaintiffs' position is that because the three types of damages (unpaid wages, liquidated, and the state law damages) serve different purposes, they all apply and are recoverable. *See, e.g., Evans v. Loveland Automotive Investments, Inc.*, 632 Fed. Appx. 496, 498 (10th Cir. 2015); *Morales v. Cancun Charlies Restaurant*, No. 3:07-cv-1836, 2010 U.S. Dist. LEXIS 125516, at *26 (D. Conn. Nov. 23, 2010) ("Courts have held that plaintiffs should be able to recover liquidated damages simultaneously under the FLSA and the applicable state statute where the two statutes serve different purpo215ses."). Defendants are likely to argue that Plaintiffs can only recover one set of unpaid wages and one set of liquidated/additional damages.

The proposed settlement in this case was reached only after lengthy and contentious litigation. This lawsuit has been active for over three and a half years with numerous filings and opposed motions, and the Parties participated in a mediation with an independent mediator. Whether through fighting the merits of this lawsuit or due to a potential lack of collectability, Plaintiffs risk a worse result if litigation continued. This risk weighs in favor of settling the case at this time and supports the settlement reached here. As it stands, the Settlement Agreement provides substantial relief to the aggrieved workers.

Ultimately, Plaintiffs estimate that the opt-in plaintiffs suffered $151,574.58 in unpaid wages. In addition, Plaintiffs claim they are entitled to FLSA liquidated damages, and additional

damages under Ohio and Kentucky law. Thus, the Settlement Agreement provides the opt-ins with approximately 190% of their unpaid wages.

Defendants dispute that the IRS rate applies at all, and courts are divided on this question. *See, e.g., Hatmaker*, 2019 U.S. Dist. LEXIS 191790, *7-9, 17-18; *Parker*, at 814; compare*, Perrin*, 114 F. Supp. 3d 707. Defendants claim they are allowed to reimburse a "reasonably approximate amount," and that they have done so. As a result, Defendants claim Plaintiffs have suffered $0 in damages. Moreover, Defendants dispute that Plaintiffs' calculations are accurate; *i.e.*, even assuming Plaintiffs' legal theory prevailed, Defendants would argue that the damages are substantially less.

The Settlement Agreement resolves only the claims of the individuals who opted into the case. Those who did not opt in do not release any claims and are free to assert their own claims in the future, assuming the statute of limitations has not expired.

This is an excellent result and far exceeds the result of similar cases. Compare *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, *12 (N.D. Ohio Mar. 8, 2010) (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well above… average."). This factor supports the requested fee award.

### 5.1. Other Considerations

When evaluating settlements, courts also look at other factors, including (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members, and (6) the public interest. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20. Each factor is addressed below.

**Complexity, expense, and likely duration.** Wage and hour class and collective actions are inherently complex and time-consuming. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). Pizza delivery driver cases are especially complex and time consuming because of the disputed legal standard that turns on regulations, *Auer/Kisor* deference issues, Department of Labor guidance and case law, and the potential for expert testimony. Given the numerous locations and state laws at issue, this case is one of the more complicated under-reimbursement cases. This factor weighs in favor of approving the settlement.

**The stage of the proceedings and amount of discovery completed.** The parties have been litigating this dispute for over three and a half years and have filed numerous non-dispositive motions. *See* §3, *supra*. The parties have already briefed a Motion to Send Notice and gone through the FLSA opt-in process.

The parties had exchanged sufficient discovery to evaluate the strengths and weaknesses of each claim and calculate damages. Specifically, Defendants produced payroll records of the workers' hours worked, wages paid, and tips earned. The parties also prepared for and participated

in a mediation by an uninterested third party using the data produced by Defendants. Considering these factors, the parties are able to properly evaluate settlement at this stage.

**The judgment of experienced trial counsel.** Plaintiffs' counsel supports the settlement and believes that it is a fair, adequate, and reasonable resolution. Counsel is well-equipped to evaluate the case. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *18 (S.D. Ohio Nov. 25, 2019) ("The Court is familiar with Class Counsel's work in this and other cases like it. The 'pizza delivery driver' cases require substantial expertise and firm resources to pursue. The Court agrees that Class Counsel's work in this area is exemplary…"); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 U.S. Dist. LEXIS 11019, *14 (Jan. 18, 2019 S.D. Ohio) ("Plaintiff's [Biller & Kimble, LLC] Counsel, having established an expertise in 'pizza delivery driver' litigation, have expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here."); *Young v. Rolling in the Dough, Inc.*, No. 1:17-cv-7825, 2020 WL 969616, 2020 U.S. Dist. LEXIS 35941, at *12–13 (N.D. Ill. Feb. 26, 2020) ("Class Counsel litigates pizza delivery driver cases all around the country with success, and has been counsel in a number of 'landmark' decisions in this area.").

The opt-ins risk a worse result if the Sixth Circuit decides that Defendants who did not track and reimburse actual expense were permitted to "reasonably approximate." This could lower Plaintiffs' total potential damages and cause both sides to incur significant additional expenses through the employ of expert testimony.

Plaintiffs' counsel attest that, given the strengths and weaknesses of the claims, this settlement is fair, adequate, and reasonable.

**The nature of negotiations.** The parties reached the above settlement only after substantial negotiations, which included a mediation with a professional mediator, and additional document exchanges and discovery. This factor supports approving the proposed settlement.

**Any objections from class members.** There are no objections. Each of the opt-ins have affirmatively joined this litigation and delegated settlement authority to Plaintiff. *See* Notice of Consent to Join Forms filed by each opt-in Plaintiff, *e.g.* Doc. 21-28.

**The public interest.** The public interest generally favors settling litigation. This case is no different. Further, because "[t]he settlement agreement itself is… public rather than confidential" this "supports the interests of other employees, the Congress, and the public, in seeing that FLSA disputes are resolved in a fair and reasonable way that is consistent with the requirements of the statute." *West v. Emeritus Corp.*, No. 3:15-CV-437, 2017 U.S. Dist. LEXIS 104269, at *6 (M.D. Tenn. July 5, 2017). The public has an interest in ensuring that minimum wage workers receive a just and speedy resolution to claims for unpaid wages. *Waters v. Pizza to You, LLC*, 2022 U.S. Dist. LEXIS 26005, at *9.

### 5.2. The payment of attorneys' fees and costs is reasonable.

Plaintiffs' Counsel seek their lodestar from the settlement fund as attorneys' fees ($308,195.08)[4], plus reimbursement of advanced litigation costs. This award is less than Class Counsel's actual lodestar. Defendants do not object to this award.

In general, the percentage-of-the-fund method of fees is used in FLSA cases, except in cases where compelling circumstances warrant a different result. *Estate of McConnell v. EUBA Corp.*,

---

[4] This is actually substantially less Plaintiff's counsel's actual lodestar, which includes an additional $148,242.50. *See* Farmwald Decl., ¶ 13.

2021 U.S. Dist. LEXIS 97576, at *15-16 (S.D. Ohio May 24, 2021). Courts have found compelling circumstances where, as here, the lodestar amount exceeds one-third of the fund. Id. "In these circumstances—where, given the size of the damages suffered by the workers—the percentage method would not provide a 'reasonable fee' that is 'adequately compensatory to attract competent counsel.'" *Id.* (internal citations omitted.).

When an FLSA settlement agreement proposes an award of attorney's fees, the fees are mandatory, but they must be reasonable. 29 U.S.C. § 216(b); *Wachtelhausen v. CCBCC, Inc.*, No. 2:20-cv-06234, 2021 U.S. Dist. LEXIS 162275, at *8 (S.D. Ohio Aug. 26, 2021). "The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Ousley v. CG Consulting, LLC*, No. 2:23-cv-01435, 2023 U.S. Dist. LEXIS 86943, at *11-12 (S.D. Ohio May 16, 2023), quoting *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). Courts should not place an undue emphasis on the amount of the recovery because an award of attorney fees in an FLSA case "encourages the vindication of congressionally identified policies and rights." *Id.* Plaintiff bears the burden of proving the requested fees are reasonable. *Id.*

In determining what is reasonable, the general approach is to "first determine the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate." *Ousley*, 2023 U.S. Dist. LEXIS 86943, *12 (citations omitted). "There is a strong presumption that the lodestar represents the reasonable fee." *Id.*

District Courts use the lodestar method in certain wage and hour cases where counsel for employees are required to spend substantial resources and time so that the fee award exceeds the traditional percentage-of-the-fund award or sometimes even exceeds the value of damages of the

case. *Ousley*, 2023 U.S. Dist. LEXIS 86943, *12. "In these circumstances, such a result is still necessary because of the remedial purpose of the FLSA is to help an employee to recover their wages, however significant or small." *Id.* The lodestar method, as opposed to the common fund method, better accounts for the amount of work done. *Wachtelhausen*, 2021 U.S. Dist. LEXIS 162275, at *8.

When determining the reasonableness of a lodestar fee award, courts examine the reasonableness of the hours billed and the hourly rates applied. *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007). "Multiplying reasonable rates times reasonable hours yields the lodestar." *Ousley*, 2023 U.S. Dist. LEXIS 86943, *13. "There is no proportionality limit on recoverable attorneys' fees either." *Id.*

Before addressing the hours worked and hourly rates charged on this case, Plaintiffs note that the settlement results in the class members receiving approximately 190% of their unpaid wages. This outstanding result on the merits of the case supports Plaintiff's request for attorneys' fees.

### 5.2.1. The hours billed are reasonable.

Counsel requesting a lodestar award should show that they exercised "billing judgment." *Ousley*, 2023 U.S. Dist. LEXIS 86943, *15. Counsel may exhibit billing judgment by excluding any excessive, redundant or otherwise unnecessary hours that would be unreasonable to bill a client. *Id.* Counsel may satisfy this obligation through averment that such excessive or unnecessary hours have been excluded. *Id.*

This was a heavily litigated case that required Plaintiffs' counsel to file several motions and review and extrapolate significant amounts of data in order to calculate Plaintiffs' potential damages. *See* §3, *supra*; Declaration of Laura Farmwald, attached hereto as Exhibit 2. Additionally,

Class Counsel's work will continue after approval. "Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters." *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *19.

Plaintiffs' counsel has put in a total of 932.46 attorney hours on the case. Plaintiffs' counsel has reviewed the hours billed to this action and has excluded any unnecessary, excessive or redundant entries. *Id.* If it would assist the Court, Class Counsel can make their time records available for the Court's review. However, given the voluminous nature of those records, length of litigation, number of docket entries evidencing substantial work, and time it would take to compile and review those records, Class Counsel suggest that such a detailed review is not necessary here. "In determining fee awards, courts should not 'become green-eyeshade accountants [,]' but instead must content themselves with 'rough justice[.]'" *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 618 (6th Cir. 2021).

### 5.2.2.  Plaintiffs' counsel's hourly rates are reasonable.

Courts typically look to the prevailing rate in the relevant legal community for similar services by attorneys of reasonably comparable skills, experience, and reputation when determining the reasonableness of counsel's hourly rate. *Ousley*, 2023 U.S. Dist. LEXIS 86943, *14 (citations omitted). "Courts will frequently award fees based on an attorney's customary rate, because 'normal billing rates usually provide an efficient and fair short cut for determining the market rate.'" *Id.*, quoting, *Project Vote v. Blackwell*, No. 1:06-cv-1628 2009 U.S. Dist. LEXIS 34571, *11 (N.D. Ohio March 31, 2009).

Class Counsel's primary attorneys, Andrew Biller, Andrew Kimble, and Laura Farmwald, have recently been approved for hourly rates of $600, $600, and $425, respectively. *See, e.g.,*

*Williams v. GBR Pizza, Inc.*, *et al.*, Case No. 1:21cv00828, 2023 U.S. Dist. LEXIS 233405 (M.D. N.C. April 26, 2023); *McGrothers v. GT Pizza, Inc.*, No. 2:20-cv-4050, 2022 U.S. Dist. LEXIS 228270, at *16 (S.D. Ohio Nov. 9, 2022) ("This Court previously — and repeatedly — has determined that their hourly rates are reasonable considering their experience, skill, and areas and level of expertise in the area of pizza delivery driver litigation."). These rates have been approved and been in effect for years. *See, e.g., Clark v. Pizza Baker, Inc. et al.*, No. 2:18-CV-157, 2022 U.S. Dist. LEXIS 198354, *6 (S.D. Ohio Oct. 31, 2022); *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2022 U.S. Dist. LEXIS 139084,  *5, 13-14 (S.D. Ohio Aug. 2, 2022); *McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, *19 (S.D. Ohio May 17, 2021); *Arp v. Hohla & Wyss Enters., LLP*, No. 3:18-cv-119 2020 U.S. Dist. LEXIS 207512, *19 (S.D. Ohio Nov. 5, 2020).

As of January 1, 2024, Class Counsel has increased their rates to the following amounts:

| Name | Position | Hourly Rate |
|---|---|---|
| Andy Biller | Partner | $700 |
| Andrew Kimble | Partner | $700 |
| Laura Farmwald | Senior Associate | $525 |
| Other Associates | Associate | $350 |
| Attorneys with less than 3 years of experience | Associate | $200-$270 |
| Paralegals and Support Staff | Paralegal | $185 |

This is the first time Class Counsel has adjusted their rates in several years. Class Counsel believes that these increases are appropriate given their increased experience and inflation. Andy Biller and Andrew Kimble now charge hourly rates of $700 (previously $600). Laura Farmwald's

hourly rate was also increased from $450 to $525. A court may approve an increased hourly rate based on additional experience gained by the counsel and an increase in market rates. *Collar v. Abalux*, Inc., No. 16-20872-CIV, 2020 U.S. Dist. LEXIS 209992, at *11 (S.D. Fla. Nov. 9, 2020). This increase is similar to the increase in federal district judge salaries, which have increased by 11.3% since 2020.[5] Based on these increased reasonable hourly rates, and the hours worked detailed above, Plaintiff's lodestar on this matter is $308,195.80. *See* Farmwald Decl.

In addition to the hours Class Counsel has worked on this pizza delivery driver case, Biller & Kimble, LLC has worked many thousands of hours on pizza delivery driver cases throughout the country. Class Counsel has "established an expertise in 'pizza delivery driver' litigation, having expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 U.S. Dist. LEXIS 11019, at *14 (S.D. Ohio Jan. 17, 2019); *see also Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *6 (discussing Biller & Kimble's expertise in this area). These hours "directly benefited the class in this case." *Arp*, 2020 U.S. Dist. LEXIS 207512, at 20. "A firm's expertise in a niche area provides important context when analyzing the reasonableness of a fees." *Id*. at *21. "It would be inequitable for a court to reduce a fee award based on a lodestar cross-check without considering a law firm's work other cases raising the same or similar issues." *Id*. Here, Class Counsel's expertise in this niche area enhanced their representation here. In light of Plaintiff's counsel's lodestar amount, and in light of the fact that Plaintiff's counsel's work on the case will continue after approval, the request for attorneys' fees in the amount of $308,195.08 is reasonable and should be approved.

---

[5] [Judicial Compensation | United States Courts (uscourts.gov)](#) Plaintiffs' counsel's requested fee increase represents a 16.7% increase for Partners Andy Biller and Andrew Kimble and Senior Associate Laura Farmwald.

### 5.3. Reimbursement for advanced litigation expenses should be approved.

Class Counsel also seeks reimbursement of advanced litigation expenses and administration costs. In this case, Class Counsel has incurred a total of $12,853.28 in litigation costs and expenses, all of which Class Counsel advanced. (Farmwald Decl. at ¶ 16). The expenses are detailed and itemized in Attorney Farmwald's declaration and include filing fees, service, deposition, mediation costs. *Id.* Plaintiffs ask the court to approve reimbursement of these expenses.

### 6. The incentive service award should be approved.

The incentive payments are reasonable, and similar payments are routinely awarded. "Courts routinely approve incentive awards to compensate named plaintiff for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); *see also Dun & Bradstreet*, 130 F.R.D 366, 374 (S.D. Ohio 1990) (approving incentive awards to class representatives for their time and expenses incurred pursing the litigation). Such compensation for time, effort, risk, and service does not improperly grant preferential treatment to class representatives. The settlement agreement earmarks $10,000 to each named Plaintiff for his/her work in bringing and prosecuting the case on behalf of the delivery drivers. This amount similar to the amounts awarded in other wage cases.[6] Plaintiffs have spent time and effort working with Class Counsel on this case. As in any case, Plaintiffs bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiffs' participation, this settlement would not have occurred.

---

[6] *See Arledge*, 2018 U.S. Dist. LEXIS 179474, *6; *Mullins*, 2019 LEXIS 11019, *6; *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, *7-8; *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, Doc. 52 (N.D. Ohio May 17, 2019); *Arp v. Hohla & Wyss Enterprises, LLC*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, *7 (S.D. Ohio Nov. 5, 2020).

## 7. Conclusion

Plaintiffs seek an order (1) granting approval of the Settlement Agreement as fair, reasonable, and adequate; (2) approving the requested award of attorney's fees and costs; (3) approving the service award; (4) dismissing the action with prejudice; and (5) ordering the parties carry out the remaining terms of the Settlement Agreement.

Respectfully submitted,

*/s/ Laura E. Farmwald*
Andrew R. Biller (Ohio Bar # 0081452)
Andrew P. Kimble (Ohio Bar # 0093172)
Laura E. Farmwald (Ohio Bar #0095304)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiffs and putative class*

**Certificate of Service**

I hereby certify that a copy of the foregoing was filed electronically on February 9, 2024.

Notice of this filing will be sent to all Parties by operation of the Court's electronic filing system.

/s/ *Laura E. Farmwald*
Laura E. Farmwald